Mr. Carpenter. May it please the Court, Kenneth Carpenter appearing on behalf of Mr. Joseph O'Neill. Mr. O'Neill appeals a decision below in which the Board failed to consider or apply the statute 38 U.S.C. section 1154B. The VA conceded before the Veterans Court that the Board had not considered or applied that provision of law. The Court below found that that was also the case, but then concluded that that was not prejudicial error as a result. The basis for that decision was the lower court's interpretation of 1154B to require medical nexus evidence. Obviously, I believe that I need to distinguish this Court's case in Shedden, which found that medical nexus was required under 105A. 1154B contains entirely different language than 105A does, and in particular it does not, that is 105A, refer to the term service connection, and it does not refer to proof of service connection, whereas 1154B does, and it says that the Secretary shall accept. I don't understand your argument. If there's no nexus requirement, what is the Veteran required to show? He's required to show, either by lay or other evidence, that there was a disease or injury that was incurred during service. This record shows that there was a heart condition. Suppose he had a heart condition during service, but he's now suffering from cancer. Is that sufficient evidence to recover on the cancer claim? There's got to be some connection, right? The connection is the heart condition. He is entitled to a finding of service connection for a heart condition. But he's got to at least show that he had a heart condition while he was in the service. His lay evidence or the other evidence of record needs to show that. That's correct. At least to that extent, there's a nexus requirement, right? Only in terms of that's what happened during service. Well, it's the same disease or condition. You agreed with my example that if he had a heart condition in service and later suffered from cancer, that wouldn't be sufficient. There's no nexus between the service heart condition and the later cancer. No, but what would be service connected was what was incurred during service. Yeah, but you seem to be agreeing that there has to be some sort of nexus requirement. You're just arguing for a different nexus requirement. In order to recover for a current heart condition, he has to show that he had a heart condition in service. Well, possibly I'm quibbling over something that isn't important here. What is important here under 1154B is whether or not what is required under 1154B is sufficient proof of service connection. We believe that you cannot ignore, as the board did and as the VA before the board did, ignore the provisions of 1154B and then have the court below say that that's a harmless error because what happened in service must be concluded to have been sufficient proof of having been incurred. What the board found was that Mr. O'Neill's heart condition was not incurred or aggravated during service. So they rebutted the presumption that may have arisen. But how can you rebut the presumption if you didn't consider or apply it? And then the question becomes what they used. There is no discussion as to whether or not the evidence that they developed should have been developed in the first instance or was clear and convincing evidence sufficient to rebut. Is your point here that the board said that the presumption was rebutted by a preponderance of the evidence rather than clear and convincing evidence? Well, that's inherent in what they did. But what they did was not consider it at all. And the VA conceded the 1154B statute, the proof of service connection by a combat veteran, his lay evidence and the other evidence of record that there was an incurrence of a heart condition during service. They give it to Dr. Hollenberg and then later to Dr. Simpson. They both find there's no connection. What do you want to happen beyond that? But what they gave to those two doctors was... They're not legal officers. They're not going to apply burdens of proof. Their job is to tell whether there's a service connection based on the records and their examination of the patient. They do that and they come up with a no. What more do we need? I think what more you need, Your Honor, is the recognition that Congress intended under 1154B for combat veterans to have a lightened burden of proof of service connection and that the burden of proof was met in this case by the lay or other evidence. And then what the VA did was to develop evidence to undermine that statement without any direction from the VA to its two examiners to presume that there was incurrence. No, there's not. And in fact... I'm trying to figure out what you want to happen here. You want somebody to walk into Dr. Hollenberg and say, now you examined this patient and this record and let me give you a little legal tutorial. Here are the burdens of proof and you've got to find that this quantum of evidence, which courts can't in many cases precisely articulate, is that what you want? You want a legal degree from the doctor? No, absolutely not, Your Honor. That diminishes the significance of 1154B. The significance of 1154B is that the proof of service connection is established and the VA should have recognized that. Well, there is a rebuttable presumption. And they never told the doctors that they were rebutting a presumption. They asked the doctors to make the determination in the first instance. The problem I'm having isn't that precisely what we want them to do, is to give their medical opinion and then the board will deal with the legal implications of that. You want the doctors to somehow give legal advice? No, Your Honor. I want the doctors to be instructed by the VA as required by 1154B. Where does it say in 1154B that you tell a doctor that there is a legal burden that he has to comply with? It doesn't say anything about the doctors. Of course, that's the point. What it says is that it shall be sufficient proof of service connection, that Mr. O'Neill should not have been required to prove anything more than his lay statements and the medical evidence of treatment for a heart condition in service for the right to a presumption that what was incurred in service was incurred in service. Let's assume for a moment that's exactly, and indeed that's the way I read it too, but now when I go to Dr. Hollenberg and later to Dr. Simpson, why don't I just ask them, please advise us on whether this is service connected? What's the error in doing that? Because if you don't tell them that the service connection is already established, that there is sufficient proof, no, then you ask them. Mr. Cartman, your argument, I'm having the same problem, it doesn't make any sense that you have to tell the doctors about this. What you ought to be arguing is that there was evidence that he had rheumatic fever in service, that he was entitled to a presumption, and the presumption had to be overcome by clear and convincing evidence, whereas what the board did was allow it to be overcome by a preponderance of the evidence. I apologize then for my mischaracterization. At least that would put the legalities with the legal officers and the medicalities with the medical officers. That's right, and the error here was acknowledged by the VA below and acknowledged by the Veterans Court below that they didn't consider or apply it, and what they did do was to use the preponderance of evidence test, and that's not the test under 1154B, and the test under 1154B is clear and convincing evidence, and there is no discussion of either 1154B or whether or not the evidence from Dr. Hollenberg and Dr. Simpson did or did not amount to clear and convincing evidence. That's simply not in the board's decision, and that was prejudicial error. Was the rheumatic fever manual issue raised below? I'm not sure I know what you mean by that. Well, there's a manual. Oh, the reference to the manual provision about rheumatic fever? Yes, that gives rheumatic fever. Not that I'm aware of, no. It's referenced in the board decision, isn't it? Yes. 132. But it wasn't raised. Is it before us, do you think? There's no analysis in the board opinion that I saw, but there is a reference to it in the court. I don't recall that the veterans court relied on that part of the board's discussion but simply began with the acknowledgment that 1154B was neither considered or applied, and therefore it was harmless error. I don't believe they ever got to that at the veterans court. I see that I'm into my rebuttal time. Thank you, Mr. Carpenter. Ms. Stern. May it please the Court that we understood Mr. O'Neill's argument from his brief. He based on the theory that 1154B simply eliminates any need to demonstrate a nexus between a current disability and an injury or disease that was incurred. Well, he's gone past that under questioning from Judge Dyke. He now says that, of course, there has to be a connection. Why isn't there a sufficient one in this case? Because in this case the connection has to be medical evidence of a connection. And in this case there was no medical evidence. Why does it have to be medical evidence? Why doesn't 1154B specifically say that you would have lay evidence? The guy says, and we've had cases about this, the guy says, I had rheumatic fever and was in the service. My doctors told me I had rheumatic fever when I was in the service. And, you know, that's sufficient to create a presumption. A presumption has to be overcome relying on the manual about rheumatic fever and the consequences of that. And that has to be overcome by clear and convincing evidence. And the Board didn't rely on the clear and convincing evidence standard. It just said profanity, so it applied the wrong standard. Well, 1154B doesn't talk about the connection. It doesn't talk about the type of evidence necessary to establish the nexus. It talks about the kind of evidence that's necessary to establish in-service occurrence. So your suggestion is that lay evidence can never be sufficient to establish the connection? In certain circumstances. For example, maybe something obvious like a broken leg kind of thing, but not whether we're talking about medical etiology or... A satisfactory lay or other evidence. Why can't that... Yes, it could in some instances. But in this case, there was no medical evidence, no evidence whatsoever of a nexus between his current disability, his current heart condition, and the heart condition that the Board presumed and the Court presumed he had in service. So 1154B creates a likened evidence... But he had a diagnosis. I mean, the Board itself says he had a diagnosis of rheumatic fever when he was in the service. Right. So that's not in dispute. That is not in dispute. The Court said the Board could assume that he had this rheumatic fever in service. That's what 1154B would help him to establish. He actually didn't even need it because there were some medical records establishing it. So the manual says if you had rheumatic fever, that's sufficient proof if there's a valve insufficiency later on. Didn't he have a valve insufficiency? No. What the medical doctor said was that he had a current heart condition that was coronary artery disease and that that was unrelated to any heart-related conditions that he had while he was in service. And so 1154B doesn't talk to that. Why is there kind of an axiomatic link between rheumatic fever and heart conditions? Is there a lot of distinction? Because there are different kinds of heart conditions, Your Honor. There are heart conditions that are caused by eating too much fried food. That's not necessarily related to rheumatic disease. Heart conditions are fairly complicated, complex, and there are a variety of causes. In service, we apply 1154B to assume that in service Mr. O'Neill had a heart condition. However, what he needed to demonstrate and what 1154B does not address is he needed to establish a connection between that assumed in-service heart illness and his current heart disease, and that there was no evidence of. The doctors that looked at his current heart disease said there's no connection between what he's got now and what he had in service. He's got coronary artery disease, blockage. This is unrelated to anything that happened in service. 1154B doesn't really speak to that situation. It just speaks to the in-service occurrence part. I understand that the manual may not be before us, but just for a second, indulge me that the manual is somehow before us and we can look at it. Doesn't it give, by its language, a certain amount of service connection impetus to any kind of heart disease? And then, of course, the government has to come back and rebut that the heart disease was connected to the rheumatic fever? Well, I have to confess that I didn't spend a lot of time on the manual because it was clearly not raised on appeal, but the way I read it, especially looking at the Veterans Court decision on page 8, the manual says What page of the record? That's appendix page 8. Appendix page 8. Appendix page 8 where the court talks about the application of the manual and quotes the provision as saying that with a history of rheumatic fever and aortic valve insufficiency that manifests itself years later will be shown to be service-connected. But again, the record on Mr. O'Neill's... This wasn't an aortic valve insufficiency. Exactly. That's not his current disability. His current disability appears to be coronary artery disease, not an aortic valve insufficiency. And I'm not afraid to... Wait, wait, wait, wait, wait. Just look at the next page here. It says, In this case, the board determined that based on the March 1999-2003 VA medical review, Mr. O'Neill did not have rheumatic fever during service. Therefore, the manual doesn't apply. So the ground for decision appears to be that he hasn't established that he had rheumatic fever, not that it was a different kind of heart condition. Well, I agree that that sentence does say that he didn't have rheumatic fever during service. But he still wasn't... it wasn't an aortic valve insufficiency. That's correct, Your Honor. As well. That's correct, and that's what the Court of Appeals... Where did the board say that? That it wasn't an aortic valve insufficiency? When the board... when the court discusses the evidence and also the board... The Court of Appeals discussed the evidence on pages 6 and 7. I think the board's probably... probably the board's discussion of the evidence is better on this issue. Just tell me where the board said that this wasn't an aortic valve insufficiency. I will. On page 132 of the appendix. 132. They're talking about the... you'll see the 1994 physician opinion opine that the veteran's present cardiac difficulties could be attributed to severe coronary artery disease. No evidence that any heart valve showed signs of rheumatic involvement. Let's see. Again, at the bottom of that page, the 2003 medical report, no current evidence of important organic valvular heart disease. There were some trivial mild valvular insufficiency, but they said that was explained by the findings. It was in the normal range. So they keep saying over and over again that there is no valvular disease. Again, I have to say that I did not... I did not put a lot of emphasis in the manual. This is going to raise an appeal, but it does seem to require a valve insufficiency, and the medical opinions did not find that. Did the board properly require overcoming any presumption by clear and convincing evidence? The board assumed that he had the in-service occurrence piece of entitlement. We look back at section 1110, there are the three pieces. There's the in-service occurrence, a current disability, and a nexus between the two. 1154B speaks to the in-service occurrence. The board assumed he had the in-service occurrence, and the court said the board is assuming that, and he has a current disability because he has a current heart condition, but what he doesn't have is the nexus piece, and 1154B doesn't speak to that. And what you seem to be saying, and this is a legal interpretation question, you seem to be saying that the nexus requirement, and let's assume that you're right, that there is a nexus requirement, can't be established by lay evidence. There has to be medical evidence before there's a presumption. If you're trying to connect two different conditions, there might hypothetically be some situation, so I guess I can't rule out that there could ever be a situation where lay evidence would be sufficient to connect them, but particularly when you're talking about heart disease, there would have to be medical evidence. When you have two different kinds of heart disease, you have this current heart disease, which is different than the presumed in-service occurrence of rheumatic fever and other heart issues. There has to be medical evidence that connects those two, and there was. He did not meet the burden on demonstrating that, and 1154B doesn't talk about that. So you're saying this is Judge Dyke's cancer, hypothetical in a slightly different way. Yes, that's exactly what I'm saying, and we gave similar examples in our brief. That's exactly the case. And 1154B just talks about the in-service occurrence, and as the Court said in Shedden v. Principi, that's not enough to demonstrate entitlement. That gets you to the first leg, but you still have to have a current disability, which he does, and you also have to have a nexus between the two, which he did not have, and that was the basis for the denial by the Court. Unless there are further questions, I think that does adequately explain our position, and for all of those reasons and those cited in our brief, we respectfully request the Court to defer on the decision. Thank you, Mr. and Mr. Carpenter. You have 4 1⁄2 minutes remaining. Thank you very much, Your Honor. If the Court please, if you would look at the Board's decision in this matter, which begins at page 120 of the record. At page 122 are the findings of fact, and in specific finding of fact 2 only concludes that the persuasive medical evidence demonstrates the veteran's present cardiovascular... I'm sorry, this is 122 of the appendix? 121, I'm sorry. I misspoke. It would be the second page of the 2004 Board decision. They have it, Your Honor? Yeah. Sorry. Finding of fact number 2 says persuasive medical evidence demonstrates the veteran's present cardiovascular disabilities were not incurred during or the result of active duty service. That is simply the wrong test under 1154B. It's about the occurrence of a heart condition in service, and if there is a medical nexus requirement, it is that which is relatable to that which was incurred during service. The conclusion of law which follows is the veteran's present cardiovascular disabilities were not incurred. It's not the disabilities that are incurred, it's the disease that is incurred during service. Nor may the cardiovascular disease be presumed to have been incurred, and it's not that cardiovascular disease that is presumed to be incurred, but whether or not there is a relationship between his current cardiovascular disease and the heart condition that was noted in service by both his lay evidence and the medical evidence. Turning then to page 133, when the board is discussing the opinion of, I believe it's Dr. Shelton, in the first full paragraph it says, the physician also stated there is no convincing evidence for rheumatic fever or rheumatic heart disease either while in or shortly thereafter. Excuse me, while in service or shortly thereafter. Again, the doctor has been focused on the wrong question here. The question should have begun with the finding that there was sufficient proof based upon the lay and other medical evidence of the incurrence of this heart condition, and then the question becomes whether or not the, and it's not for the physician then to determine whether there was no convincing evidence of what took place, that was to be presumed. And so the board is essentially saying that they're relying on the board, excuse me, on the doctor's legal analysis. And the legal analysis should be in accordance with 1154B. The board should have considered and applied it. When the board didn't consider and applied it, that was prejudicial to Mr. O'Neill. Unless there's further questions, thank you very much. Thank you, Mr. Carpenter.